THE CITY OF YONKERS, Appellant, *v.* THE FEDERAL SUGAR REFINING COMPANY, Respondent.

Second Department, April 13, 1917.

Injunction — damages for unauthorized issuance of temporary injunction — suit by incorporated village to restrain smoke nuisance — measure of damages — offset — damages suffered by inhabitants of village — allowance to counsel.

The measure of damages suffered by a defendant, engaged in refining sugar, by reason of a temporary injunction forbidding it to use soft coal in its works is not the difference in the rental value of its plant, where there is proof that the hard coal which the defendant was required to use during the time the injunction was in force affected its furnaces, failed to produce sufficient steam pressure and, although employing its usual force of workmen, its normal production of sugar was greatly reduced and the actual cost of production was increased.

Where it has been judicially determined that the plaintiff, a city, had no standing to maintain said suit for an injunction owing to the fact that the damage by the alleged smoke nuisance fell upon the inhabitants of the city, the finding of the trial court that the smoke from the soft coal was in fact a nuisance fell with the dismissal of the complaint.

Thus, the defendant is not debarred from recovering damages caused by the unauthorized injunction upon the theory that its operations were illegal so that it cannot recover damages in a suit in equity.

As the city although relieved from giving an undertaking on the issuance of a temporary injunction by section 1990 of the Code of Civil Procedure was made answerable like a surety by said section, it cannot, when sought to be held liable, offset the injury and discomfort of individual inhabitants whom it does not legally represent.

Equity aids the diligent and hence, where the defendant made default in opposing the issuance of a temporary injunction and delayed attempting to vacate the same for a considerable period, it should not be allowed damages for the entire period during which the injunction was effective.

Evidence examined, and *held*, that an allowance to the defendant's counsel as an item of damage was not excessive.

APPEAL by the plaintiff, The City of Yonkers, from an order of the Supreme Court, made at the Dutchess Special Term and entered in the office of the clerk of the county of Westchester on the 25th day of July, 1916, confirming the report of a referee, and also from an order entered in said clerk's office on the 30th day of August, 1916, amending the prior order.

The referee's report fixed the damages of the defendant occasioned by the issuance of a temporary injunction forbidding it to use soft coal in its works.

After hearing at Yonkers of a complaint against defendant for smoke nuisance, the city judge, on June 8, 1907, had refused to hold defendant for the action of the grand jury. In August following, the plaintiff, suing on behalf of the people of Yonkers, sought to enjoin defendant from operating its furnaces by using soft coal. On Saturday, August 24, 1907, an order to show cause was made, returnable at Poughkeepsie on Thursday, August twenty-ninth, why defendant should not be thus enjoined pending the suit. This order with the summons and complaint was served on defendant at its refinery on Tuesday afternoon, August twenty-seventh. Nevertheless there was no appearance at the return of the order, whereupon a temporary injunction was granted on default. This, however, was not served on defendant until about five P. M. of Wednesday, September fourth. In order not to stop the works, the plaintiff agreed that soft coal should be used until defendant received a supply of hard coal, which had been ordered. The hard coal came, and its use began on the morning of Saturday, September seventh, when the refinery first came under the effect of the injunction. Defendant's counsel, who had been absent from the State, thereafter returned. He devoted a day to the examination of the papers, three days to conference with witnesses, and the preparation of affidavits, some of which were sworn to September twelfth and September thirteenth,

on which later date an order was obtained to show cause why this injunction should not be vacated.  On the return day, September seventeenth, it was amicably arranged that the injunction should be vacated, defendant stipulating to answer on the twenty-seventh, and to have the issues referred on September thirtieth.  Thus the injunction ceased, having been in effect eleven days, of which nine were working days.

A trial followed before the referee, who, on May 2, 1908, reported that defendant's smoke caused damage and annoyance to many residents in the vicinity.  He also found that more perfect combustion could be attained through use of Murphy furnaces, which could be installed by June 1, 1908, and recommended that the injunction should not be effective until that date.  On this decision, judgment was entered October 21, 1908.  On appeal it was determined that plaintiff as a municipality had no standing to maintain this suit, so that the judgment was reversed.  (136 App. Div. 701.)  Plaintiff's appeal to the Court of Appeals resulted in an affirmance (207 N. Y. 724), whereupon judgment absolute was entered against the plaintiff.

An order of reference followed to take proof of defendant's damages under the injunction.  The referee reported $16,812.42 as the increased cost to refine sugar during this interim when hard coal was burned, with a loss of profits for the sugar which was not refined of $17,765.79, making $34,578.21.  A counsel fee of $2,750 for vacating the injunction, and $450 for counsel on the reference were allowed.  In confirming this report the court also allowed $975 for the fees of the referee and stenographer, making in all $38,753.21.

On this appeal plaintiff urges: (1) That the difference of rental value, and not the loss of profits, is the measure of injunction damages; (2) that the findings of fact showing the elements of a nuisance made defendant's operations illegal, and, therefore, not to be compensated in equity; (3) defendant's failure to be represented on the return day and its delay in moving to vacate.

*William C. Feuchs* [*R. E. Prime* and *Thomas F. Curran* with him on the brief], for the appellant.

*Charles Philip Easton,* for the respondent.

PUTNAM, J. :

Where the court stops a trade, or, as in this case, requires an immediate change of the fuel that it was using, plainly the difference of rental value would not measure the resulting loss. Here there is ample proof of the effect of hard coal in defendant's furnaces. The steam pressure fell so that engines had at times to be shut down so as to let the steam rise to a working pressure. The full force of men had still to be kept, since more efforts became necessary to keep the sugar moving, as it tended to be clogged from the fall of temperature and reduction of steam power. At that season the weekly output was 7,000,000 to 8,000,000 pounds. For the two weeks affected the estimated normal production was, therefore, taken as 15,000,000 pounds; the actual amount produced was 7,734,422 pounds; deficiency in production, 7,265,578 pounds.

On this diminished output defendant's testimony showed an increased cost and consequent loss of average profits of $17,765.79, making as the total business loss $34,578. At this time the average net profit in refining (.24452 cents per 100 pounds) if applied to 15,000,000 pounds, the normal two weeks' output at that season, would be $36,678. Yet with an actual production of fifty-one and one-half per cent of its average (although no doubt attended with difficulty and interruption), the defendant recovers from this change of fuel $34,578.21 or ninety-four per cent of its maximum two weeks' profits. As the referee pursued a proper method, and we have not before us all the detailed factors of this computation, and taking also into consideration that a loss of steam power would vitally disorganize the processes of a refinery, we cannot reject this aggregate computation, which, based on the nine working days involved, figures an average daily loss of over $3,800.

The findings of the trial referee as to the nuisance due to the defendant's smoke, though not discussed on the appeals, necessarily fell with the reversal of the judgment. The court has determined that, on the facts shown, the city of Yonkers had not the legal standing to maintain this suit. Hence we cannot regard these findings, however they may have been supported, as establishing that defendant's consumption of

soft coal outlawed it from recovering the damage for stoppage of its plant, or the incidental damage suffered while under restraint. One may not recover for profits of an illegal business. (*Kane* v. *Johnston,* 9 Bosw. 154,. 157.) Unless, however, the business or traffic were clearly unlawful, the party who has obtained an injunctive restraint cannot urge the nature of the business to relieve him from damages. As Judge Rapallo said: "Whether in fact the proceedings restrained were or were not rightfully conducted he was not in a position to try, or to compel the defendant to try, upon the reference as to damages." (*Andrews* v. *Glenville Woolen Co.,* 50 N. Y. 282, 287.)

The final outcome of this unfortunate litigation is a disclosure of serious injury by deposit of soot and soft coal products to many residents of the vicinage, but no legal damage to the public buildings, streets or parks of Yonkers. Plainly the city (which under section 1990 of the Code of Civil Procedure is answerable like a surety on an injunction bond) cannot, against this clear liability, attempt to offset the injury and discomfort to individuals whom it does not here represent.

An ancient doctrine of equity is to aid the diligent. Defendant received notice to appear and to say what it had to say against the issuance of this injunction. The notice was served in the period fixed by the justice. Yet defendant allowed the hearing to go by default. Defendant's president did not receive the papers until eleven o'clock on the return day. Even then a message by telephone to the clerk of the court would no doubt have been heeded. Although it was obvious that an injunction had been granted, defendant still appears to have taken no preventive steps until the order was served on September fourth, a full week after service of the order to show cause. Beyond arranging to hold off its effect till hard coal came, nothing appears to have been done for another week, when opposing affidavits were prepared. The dissolution of the injunction so readily arranged on September seventeenth emphasizes the previous inaction. Here was an industrial plant employing 850 men brought near to a standstill. Diligence of the party enjoined is to be in proportion to the exigency. (*Crounse* v. *Syracuse, C. & N. Y. R. R. Co.,* 32

Hun, 497.) It appears that besides failing to heed the order to show cause, or to act after its return, the defendant, owing to the absence of its regular counsel, let matters go until nearly twelve days after it must have had knowledge of this injunction. The allowance of damages is itself a matter of equity. (*Russell* v. *Farley,* 105 U. S. 433.) In such circumstances, I think defendant should not have the full damages as assessed for this entire period. I advise to reduce the business damage to $20,000.

We have also to look at the allowances to defendant's counsel. In some jurisdictions they would be reduced. (*Cook* v. *Chapman,* 41 N. J. Eq. 152.) Here the fee of $2,750 is limited to the proceedings up to September seventeenth, and does not embrace the trial or the appeals. In view of the threatened tie-up of a corporation with a capital of $10,000,000, and a monthly payroll of $60,000 or $70,000, we are not prepared to pronounce this allowance of $2,750 as excessive.

When the suit started, the counsel who afterwards had the injunction dissolved was absent in New Hampshire. But a defendant, when it is called on to act with promptness, cannot safely wait or depend on the return of an absent adviser in such a crisis.

I advise that the order be modified so as to lessen the recovery for trade damages to $20,000, but with the other allowances and costs as already ordered; that as thus modified the order be affirmed, without costs of this appeal.

JENKS, P. J., THOMAS and STAPLETON, JJ., concurred. CARR, J., not voting.

Order modified by reducing the business damages to $20,000, with counsel fees and costs, and as so modified affirmed, without costs of this appeal.